# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF ARKANSAS
### CENTRAL DIVISION

| | | |
|---|---|---|
| Calvin Davis; Todd Fason; NeDraya McGowan; and Robby Riedel, on behalf of themselves and all similarly situated individuals, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 4:26-cv-89-KGB |
| Boyce Hamlet, in his official capacity as Chair of the Arkansas Post-Prison Transfer Board; Lindsay Wallace, in her official capacity as Secretary of the Arkansas Department of Corrections; Jim Cheek, in his official capacity as Director of the Arkansas Division of Community Correction; and Jamie Barker, in his official capacity as Chair of the Arkansas Board of Corrections, | ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

## BRIEF IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

## TABLE OF CONTENTS

Page

INTRODUCTION ............................................................................................................1

STANDARDS FOR CLASS CERTIFICATION ..........................................................3

ARGUMENT ..................................................................................................................4

I.      The Proposed Class Satisfies the Requirements Of Rule 23 ...............................4

        A.      The Proposed Class Is Adequately Defined And Clearly Ascertainable ................4

        B.      The Proposed Class Satisfies All Rule 23(a) Requirements ....................................5

                1.      Numerosity ........................................................................................6

                2.      Commonality ....................................................................................8

                3.      Typicality ........................................................................................12

                4.      Adequacy Of Representation ...........................................................13

        C.      The Proposed Class Satisfies Federal Rule Of Civil Procedure 23(b) ..................15

II.     The Proposed Disability Subclass Satisfies All Rule 23 Requirements ...........................16

        A.      The Proposed Disability Subclass Is Adequately Defined And Clearly
                Ascertainable ...........................................................................................18

        B.      The Proposed Disability Subclass Satisfies All Rule 23(a) Requirements ............18

                1.      Numerosity ......................................................................................18

                2.      Commonality ...................................................................................19

                3.      Typicality ........................................................................................21

                4.      Adequacy Of Representation ...........................................................22

        C.      The Proposed Class Satisfies Federal Rule Of Civil Procedure 23(b) ..................23

CONCLUSION ...............................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Alpern v. UtiliCorp United, Inc.*,
   84 F.3d 1525 (8th Cir. 1996) ................................................12

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997) ................................................15, 16, 24

*Armstrong v. Davis*,
   275 F.3d 849 (9th Cir. 2001) ................................9, 10, 20, 22

*Avritt v. Reliastar Life Ins. Co.*,
   615 F.3d 1023 (8th Cir. 2010) ................................................23

*Boyd v. Ozark Air Lines, Inc.*,
   568 F.2d 50 (8th Cir. 1977) ................................................6

*Cobb v. Ga. Dep't of Cmty. Supervision*,
   No. 19-cv-32895, 2022 WL 22865202 (N.D. Ga. Oct. 13, 2022) ................20

*Coley v. Clinton*,
   635 F.2d 1364 (8th Cir. 1980) ................................................15

*Davis v. U.S. Parole Commc'n*,
   No. 24-cv-1312, 2025 WL 457779 (D.D.C. Feb. 11, 2025) ................23

*DeBoer v. Mellon Mortg. Co.*,
   64 F.3d 1171 (8th Cir. 1995) ................................................12

*Disability Rts. Council of Greater Wash. v. Wash. Metro. Area Transit Auth.*,
   239 F.R.D. 9 (D.D.C. 2006) ................................................22

*Donaldson v. Pillsbury Co.*,
   554 F.2d 825 (8th Cir. 1977) ................................................13

*Dunn v. Dunn*,
   318 F.R.D. 652 (M.D. Ala. 2016) ................................................20

*Ebert v. Gen. Mills, Inc.*,
   823 F.3d 472 (8th Cir. 2016) ................................................8, 16

*Emanuel v. Marsh*,
   828 F.2d 438 (8th Cir.1987) ................................................6

*Farella v. Anglin*,
   346 F.R.D. 92 (W.D. Ark. 2024) .................................................................5

*Gagnon v. Scarpelli*,
   411 U.S. 778 (1973).................................................................................1, 9

*Gasca v. Precythe*,
   No. 17-cv-04149, 2019 WL 112789 (W.D. Mo. Jan. 4, 2019)....................... passim

*Hand v. Beach Ent. KC, LLC*,
   456 F. Supp. 3d 1099 (W.D. Mo. 2020) ...................................................14

*Harris v. Ga. Dep't of Corr.*,
   2021 WL 6197108 (M.D. Ga. Dec. 29, 2021) ..........................................21

*Hickman v. Ark. Bd. of Pardons & Paroles*,
   361 F. Supp. 864 (E.D. Ark. 1973)..........................................................4, 9

*Jones v. Ga State Bd. of Pardons & Paroles*,
   59 F.3d 1145 (11th Cir. 1995) ....................................................................4

*Knight v. Progressive Nw. Ins. Co.*,
   No. 22-cv-203, 2024 WL 5046481 (E.D. Ark. Dec. 9, 2024) ...................7

*McKay v. Cnty. Election Comm'rs for Pulaski Cnty.*,
   158 F.R.D. 620 (E.D. Ark. 1994)..............................................................24

*McKeage v. TMBC, LLC*,
   847 F.3d 992 (8th Cir. 2017) ......................................................................4

*Moore v. Napolitano*,
   926 F. Supp. 2d 8 (D.D.C. 2013)..............................................................22

*Morrissey v. Brewer*,
   408 U.S. 471 (1972)..................................................................................1, 9

*Murphy v. Piper*,
   No. 16-cv-2623, 2017 WL 4355970 (D. Minn. Sept. 29, 2017)................24

*Paxton v. Union Nat'l Bank*,
   688 F.2d 552 (8th Cir.1982) ........................................................6, 12, 13

*Planned Parenthood Ark. & E. Okla. v. Selig*,
   313 F.R.D. 81 (E.D. Ark. 2016).............................................................5, 23

*Postawko v. Mo. Dep't of Corr.*,
   910 F.3d 1030 (8th Cir. 2018) ............................................................ passim

*Postawko v. Mo. Dep't of Corr.*,
   No. 16-cv-04219, 2017 WL 3185155 (W.D. Mo. July 26, 2017) ....................................7, 18

*Robinson v. Sears, Roebuck & Co.*,
   111 F. Supp. 2d 1101 (E.D. Ark. 2000) ...........................................................................6, 11

*Sandusky Wellness Ctr., LLC v. Medtox Sci., Inc.*,
   821 F.3d 992 (8th Cir. 2016) ...................................................................................3, 4, 8

*Smith v. SSECO, Inc.*,
   No. 14-cv-435, 2016 WL 10586286 (E.D. Ark. Apr. 11, 2016)..............................................7

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011)............................................................................................... passim

*Yates v. Collier*,
   868 F.3d 354 (5th Cir. 2017) ...................................................................................20

## STATUTES AND REGULATIONS

29 U.S.C. § 705(9)(B)............................................................................................2, 16, 25

29 U.S.C. § 794................................................................................................................2

42 U.S.C. § 12102.....................................................................................................2, 16, 25

Ark. Admin. Code § 158.00.3-2 ...........................................................................................2

Ark. Admin. Code § 158.00.3-2(18).......................................................................................1

Ark. Admin. Code § 158.00.3-4.2(g)(2)...............................................................................1, 11

12 Ark. Code R. § 60-102................................................................................................18

## RULES

Fed. R. Civ. P. 23 ................................................................................................. 5, 12, 25

Fed. R. Civ. P. 23(a) ................................................................................................. 3, 7

Fed. R. Civ. P. 23(a)(1)............................................................................................. 7, 10

Fed. R. Civ. P. 23(a)(2)............................................................................................. 10, 13

Fed. R. Civ. P. 23(a)(3)............................................................................................. 16, 25

Fed. R. Civ. P. 23(b) ................................................................................................. 3, 4

Fed. R. Civ. P. 23(b)(1)(A) ................................................................................. 3, 4, 19, 29

Fed. R. Civ. P. 23(b)(2)...................................................................................... passim

Fed. R. Civ. P. 23(c)(5)................................................................................. 3, 5, 20

## TREATISES

5-23 Moore's Federal Practice—Civil § 23.43(1)(b) (2018)........................................15

## CONSTITUTIONAL PROVISIONS

U.S. Const. amend. XIV, § 1 .....................................................................1, 8

## OTHER AUTHORITIES

*Programs & Services*, Ark. Div. of Cmty. Corr.,
   https://doc.arkansas.gov/community-correction/programs-services (last visited
   Feb. 1, 2026) ................................................................................................1

## INTRODUCTION

This lawsuit challenges Defendants' unconstitutional and unlawful parole revocation policies and procedures.[1] Plaintiffs contend that the Arkansas Department of Corrections ("ADC") and its Arkansas Post-Prison Transfer Board ("PPTB") violate their rights under the Due Process Clause to the Fourteenth Amendment to the United States Constitution by, among other things, failing to consider whether parolees qualify for state-appointed counsel as required by *Gagnon v. Scarpelli*, 411 U.S. 778 (1973), by failing to appoint counsel to those parolees who so qualify, and by otherwise failing to provide constitutionally adequate parole revocation processes as required by *Morrissey v. Brewer*, 408 U.S. 471 (1972), and its progeny.

In open violation of *Gagnon*, Arkansas regulation provides that no person facing revocation can be screened for or receive state-appointed counsel. *See* Ark. Admin. Code § 158.00.3-4.2(g)(2) ("[T]he offender shall not have the right to have counsel appointed by the State."); Pls.' Br. in Supp. of Mot. for TRO & Prelim. Inj. ("TRO/PI Br.") at 8. This policy applies to all parolees, even those who qualify under *Gagnon* because they are indigent and (1) have colorable claims that they did not commit the alleged parole violations, (2) have mitigating evidence explaining why revocation is inappropriate, and/or (3) would have difficulty effectively advocating on their own behalf given the complexity of the process or their own mental health, medical, educational, or

---

[1]     Throughout this brief, "parole" is used to refer to parole as well as post-release supervision; "parolees" is used to refer to both people on parole and people on post-release supervision; and "parole revocation judge" is used to refer to revocation hearing judges for both parole and post-release supervision revocation hearings. Both parole and post-release supervision are subject to the same revocation hearing requirements in Arkansas. *See* Ark. Admin. Code § 158.00.3-2(18) ("For the purposes of this rule, parole is included without limitation in the definition of post-release supervision."). People subject to both forms of supervision overwhelmingly refer to their supervision as "parole." Even the Arkansas Division of Community Correction, the agency responsible for overseeing all community supervision, uses "parole" and "post-release supervision" interchangeably. *See, e.g.*, *Programs & Services*, Ark. Div. of Cmty. Corr., https://doc.arkansas.gov/community-correction/programs-services (last visited Feb. 1, 2026).

other challenges. Defendants also maintain a parole revocation system that fails to provide fundamental due process protections required by *Morrissey*, such as meaningful preliminary and final hearings regarding alleged violations of parole and informed, voluntary consent before waiver of any rights. *See* TRO/PI Br. at 9–12.

At those hearings, the presiding revocation hearing judge (also known as a "parole revocation judge" or "PRJ") merely rubber-stamps the parole violation report submitted by the community supervision officer ("CSO")[2] or the police reports submitted by arresting officers, without adequately inquiring into their reliability. The system is not designed to—and does not—provide parolees with a meaningful opportunity to speak on their own behalf, present evidence or witnesses, or cross-examine adverse witnesses, including the CSOs and arresting officers whose reports serve as the basis for the alleged parole violation. *See id.* at 10–13.

Plaintiffs Calvin Davis, Todd Fason, NeDraya McGowan, and Robby Riedel (jointly, "Named Plaintiffs") are all at imminent risk of facing these violations of their rights in their pending revocation proceedings. They seek to represent a class of people who, like them, are subject and will be subjected to the same policies, procedures, and customs that violate their well-established rights. Therefore, the proposed class consists of all adult parolees who are in the custody, or under the supervision, of the ADC, and who currently face, or will in the future face, parole revocation proceedings administered by Defendants (the "Proposed Class"). Pursuant to Fed. R. Civ. P. 23(c)(5), Plaintiffs also seek certification of a subclass bringing disability-related claims under Title II of the Americans with Disabilities Act ("ADA") and § 504 of the

---

[2]    CSOs are ACC employees "tasked with the supervision of offenders released to post-release supervision or persons who otherwise fall under the supervisory authority of the [ACC]." Ark. Admin. Code § 158.00.3-2. A parole officer ("PO") is a type of CSO. The declarations of parolees submitted as exhibits attached to the Motion for Temporary Restraining Order and/or Preliminary Injunction use "PO" and "CSO" interchangeably.

Rehabilitation Act. The proposed subclass consists of all adult parolees who are in the custody, or under the supervision, of the ADC; who have a disability, as defined by 42 U.S.C. § 12102 and 29 U.S.C. § 705(9)(B); who need accommodations in order to meaningfully access and participate equally in the parole revocation process; and who currently face, or in the future will face, parole revocation proceedings administered by Defendants (the "Proposed Disability Subclass"). For the reasons stated below, this case should proceed as a class action under Rule 23(b)(2) or (b)(1)(A), and Plaintiffs' Motion for Class Certification should be granted.

## STANDARDS FOR CLASS CERTIFICATION

To certify a class under the Federal Rules, a court must find first that plaintiffs "meet all of the requirements of Rule 23(a)," and second that they "satisfy one of the three subsections of Rule 23(b)." *Postawko v. Mo. Dep't of Corr.*, 910 F.3d 1030, 1036 (8th Cir. 2018). The requirements of Rule 23(a) are:

1.    the class is so numerous that joinder of all members is impracticable;

2.    there are questions of law or fact common to the class;

3.    the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

4.    the representative parties will fairly and adequately protect the interests of the class.

Rule 23(b) requires plaintiffs to demonstrate that the proposed class fits into at least one identified category of claims. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 345–46 (2011). As relevant here, the action can involve a party opposing the class who acted on grounds that apply generally to the class. Fed. R. Civ. P. 23(b)(2). Alternatively, it is sufficient under Rule 23(b)(1)(A) to show that "prosecuting separate actions by or against individual class members would create a risk of . . . inconsistent or varying adjudications with respect to individual class members that

3

would establish incompatible standards of conduct for the party opposing the class." Fed. R. Civ. P. 23(b)(1)(A).

Essential to this analysis is a finding that the proposed class is "adequately defined and clearly ascertainable." *Sandusky Wellness Ctr., LLC v. Medtox Sci., Inc.*, 821 F.3d 992, 996 (8th Cir. 2016) (citation omitted). The focus of this threshold ascertainability inquiry is whether the proposed class definition identifies class members by objective criteria. *Id.* at 997.

Finally, Rule 23 permits a class to be divided into subclasses where appropriate. *See* Fed. R. Civ. P. 23(c)(5).

## ARGUMENT

Since *Gagnon* and *Morrissey* were decided over fifty years ago, courts have repeatedly applied the law of these cases to approve class certification under Rule 23 for parolees seeking to challenge revocation policies and procedures. *See, e.g.*, *Hickman v. Ark. Bd. of Pardons & Paroles,* 361 F. Supp. 864 (E.D. Ark. 1973); Min. Entry, *Morales v. Findley*, No. 13-cv-07572 (N.D. Ill. Oct. 28, 2016); *Jones v. Ga State Bd. of Pardons & Paroles*, 59 F.3d 1145 (11th Cir. 1995). The facts in this case are strikingly similar to those in *Gasca v. Precythe*, No. 17-cv-04149, 2019 WL 112789 (W.D. Mo. Jan. 4, 2019), where the court certified a class challenging parole revocation procedures in Missouri against defendants who engaged in factually similar behavior to Defendants in this case. This Court should certify both (I) the Proposed Class and (II) the Proposed Disability Subclass.

## I.      THE PROPOSED CLASS SATISFIES THE REQUIREMENTS OF RULE 23

### A.      The Proposed Class Is Adequately Defined And Clearly Ascertainable

In this Circuit, a "rigorous analysis of the Rule 23 requirements" includes an evaluation of whether the proposed class is "adequately defined and clearly ascertainable." *Sandusky Wellness Ctr.*, 821 F.3d at 996; *see also McKeage v. TMBC, LLC*, 847 F.3d 992, 998 (8th Cir. 2017). To be

ascertainable, the proposed class description must be sufficiently definite to identify class members by objective criteria. *See Sandusky Wellness Ctr.*, 821 F.3d at 997. These criteria should "objectively define: (1) the broad group of plaintiffs from which the class is drawn, (2) the class's temporal parameters, (3-4) additional narrowing parameters, and (5) the constitutional injury suffered by class members." *Farella v. Anglin*, 346 F.R.D. 92, 99 (W.D. Ark. 2024).

Plaintiff's Proposed Class of all adult parolees who are in the custody, or under the supervision, of the ADC, and who currently face, or who in the future will face, parole revocation proceedings administered by Defendants clears this hurdle. Upon information and belief, Defendants maintain records of all adult parolees in the State and regularly report data about their alleged and adjudicated violations. These records make it relatively easy to reliably identify Proposed Class members. While those who will face revocation in the future cannot be known now, they will be easy to identify when they face revocation based on these records. *See, e.g.*, *Planned Parenthood Ark. & E. Okla. v. Selig*, 313 F.R.D. 81, 92 (E.D. Ark. 2016) (explaining, when certifying a class of "current and future" patients, that "[a]certainability does not require that a plaintiff must be able to identify all class members at the time of class certification; rather, a plaintiff need only show that class members can be identified"). As discussed further below, each of these Proposed Class Members is subject to Defendants' unconstitutional policies, procedures, and customs.

**B.    The Proposed Class Satisfies All Rule 23(a) Requirements**

The Proposed Class satisfies Rule 23(a) because: (1) the size of the Proposed Class is such that joinder of all members would be impracticable; (2) the questions of law and fact raised by the suit are common to all members of the Proposed Class, and a decision by this Court on those common questions would resolve class claims simultaneously; (3) the Named Plaintiffs' claims and interests are aligned with and typical of those of the Proposed Class members; and (4) the

Named Plaintiffs and their undersigned counsel will adequately and zealously represent the interests of the Proposed Class.

       1.   <u>Numerosity</u>

The requirement of numerosity is satisfied here, where the proposed class consists of thousands of parolees who face Arkansas's parole revocation system each year, including unknown future members for whom joinder is impossible.

Rule 23(a)(1) requires the proposed class to be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). The Eighth Circuit has established no specific rule as to the necessary size of a class, but has directed courts to consider several factors in determining whether joinder is feasible: "the number of persons in a proposed class, the nature of the action, the size of the individual claims, the inconvenience of trying individual suits, and any other factor relevant to the practicability of joinder." *Emanuel v. Marsh*, 828 F.2d 438, 444 (8th Cir.1987) (citing *Paxton v. Union Nat'l Bank,* 688 F.2d 552, 559–60 (8th Cir.1982)); *see also Boyd v. Ozark Air Lines, Inc*., 568 F.2d 50, 54 (8th Cir. 1977) (finding "[n]o arbitrary rules on the size of classes have been established by the courts and the question of what constitutes impracticability depends upon the facts of each case").

Here, joinder is impracticable because the Proposed Class includes thousands of people. In 2023 alone, more than 22,000 people were on parole in the State of Arkansas, more than 6,200 were reincarcerated following a parole revocation, and more than 3,400 were subject to parole revocation proceedings. *See* Ex. 1 (BJS 2023) at 33; Ex. 2 (Parole Revocation Data) at 2.[3] There are thus, at a minimum, thousands of people in the Proposed Class. This, by itself, is sufficient for

---

[3] Unless otherwise indicated, "Ex. __" refers to exhibits attached to the Motion for Temporary Restraining Order and/or Preliminary Injunction.

joinder to be impracticable. *See Robinson v. Sears, Roebuck & Co.*, 111 F. Supp. 2d 1101, 1120 (E.D. Ark. 2000) ("The Eighth Circuit has approved a class as low as 20 members, and 'the plaintiff whose class is larger than forty should meet the test of Rule 23(a)(1) on that fact alone.'" (citations omitted) (alterations in original accepted)); *Smith v. SSECO, Inc.*, No. 14-cv-435, 2016 WL 10586286, at *5 (E.D. Ark. Apr. 11, 2016) ("In general, a putative class with over forty members meets the numerosity requirement." (citation omitted) (alteration in original accepted)); *see, e.g.*, *Knight v. Progressive Nw. Ins. Co.*, No. 22-cv-203, 2024 WL 5046481, at *3 (E.D. Ark. Dec. 9, 2024) (plaintiff "easily me[t] the numerosity requirement" by pointing to "data showing thousands of potential class members").

But the Proposed Class is even larger than those numbers suggest, because it includes "individuals who may become members in the future but who are currently unidentifiable"—namely, those who are or will be on parole and will face revocation proceedings in the future. *Postawko v. Mo. Dep't of Corr.*, No. 16-cv-04219, 2017 WL 3185155, at *5 (W.D. Mo. July 26, 2017) (finding numerosity satisfied where the class included people who would be incarcerated in the future and would need Hepatitis C screening and treatment), *aff'd*, 910 F.3d 1030 (affirming because class was "likely to include at least 2,000 people"). The sheer number of people subject to the same revocation system makes joinder not only impracticable but also virtually impossible. Even if a fraction of those affected sought to challenge Defendants' unlawful policies, the court system could not feasibly manage thousands of separate actions involving the same core questions.

Beyond raw numbers, the nature of this action—challenging uniform statewide procedures—further supports a finding of numerosity. Absent class certification, each individual parolee would need to submit similar evidence of Defendants' policies or practices, resulting in duplicative litigation and wasted judicial resources. The scale of Arkansas's parole population and

the centralized nature of its revocation process render joinder impracticable, and class treatment is the only efficient means to ensure uniform resolution of these common claims.

For all these reasons, the numerosity requirement of Rule 23(a)(1) is satisfied here.

### 2.    Commonality

Every year, thousands of members of the Proposed Class face the same parole revocation system that violates their rights by failing to screen them for the appointment of counsel and failing to honor their due process rights to adequate notice and fair hearings. These violations of the Fourteenth Amendment involve a common core of facts (*e.g.*, what policies, procedures, and practices have Defendants put in place) and present common questions of law (*e.g.*, do these policies, procedures, and practices violate Plaintiffs' rights) for all potential class members.

To establish commonality under Rule 23(a)(2), Plaintiffs must show that their claims involve a common question or contention "of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Sandusky Wellness Ctr.*, 821 F.3d at 998 (quoting *Wal-Mart*, 564 U.S. at 350); *see also Ebert v. Gen. Mills, Inc.*, 823 F.3d 472, 478 (8th Cir. 2016). In evaluating commonality, courts consider "the capacity of a class-wide proceeding to generate common answers apt to drive the resolution of the litigation." *Postawko*, 910 F.3d at 1038 (citation omitted). Class certification is therefore particularly appropriate where a single policy, practice, or course of conduct gives rise to the same constitutional injury for every class member. *Id.*

Here, Plaintiffs' central contention is that Defendants' policies, procedures, and customs fail to ensure a constitutionally adequate parole revocation process for all who are or will be considered for parole revocation. This overriding claim includes multiple common questions of fact or law, such as:

- Whether Defendants are properly screening for and appointing counsel as required by *Gagnon v. Scarpelli*, 411 U.S. 778 (1973), and *Morrissey v. Brewer*, 408 U.S. 471 (1972);

- Whether Defendants are providing adequate notice to alleged parole violators of their due process rights during the revocation process;

- Whether Defendants are providing adequate notice to alleged parole violators of preliminary hearings, final hearings, revocation decisions, and their right to appeal any such decision;

- Whether Defendants have a practice or custom of pressuring alleged parole violators into waiving their preliminary or final revocation hearings without ensuring that parolees understand their rights and the implications of those waivers; and

- Whether Defendants are allowing alleged parole violators to properly make their case at their revocation hearings, including by presenting and cross-examining witnesses, introducing evidence, and speaking on behalf of themselves.

These questions turn on a common core of facts and "are capable of classwide resolution" in "one stroke." *Wal-Mart*, 564 U.S. at 350.

Many courts, including in the parole context, have found challenges to the uniform application of a governmental entity's policies and procedures like this one to be sufficient to establish commonality for class certification purposes. *See e.g.*, *Hickman*, 361 F. Supp. at 865 (certifying a class of present and future parolees for prospective injunctive and declaratory relief); *Gasca*, 2019 WL 112789, at *1–2 (certifying a class of "all adult parolees in the state of Missouri who currently face, or who in the future will face, parole revocation proceedings"); *Armstrong v.*

*Davis*, 275 F.3d 849, 856 (9th Cir. 2001) (affirming certification of class of "all present and future California state prisoners and parolees" with certain disabilities, with minor modifications to class definition). "[I]n a civil-rights suit, . . . commonality is satisfied where the lawsuit," as here, "challenges a system-wide practice or policy that affects all of the putative class members." *Armstrong*, 275 F.3d at 868.

Both the Eighth Circuit and district courts have found commonality for proposed classes like this one. In *Postawko*, for example, the Eighth Circuit held that prisoners' Eighth Amendment claims satisfied commonality because the class claims presented the common question of whether the defendants' uniform policy or custom for treating chronic Hepatitis C viral infections constituted deliberate indifference. 910 F.3d at 1038. Here, just as in *Postawko*, Defendants' failure to screen for eligibility for appointment of counsel leads to the same constitutional injury for all members of the Proposed Class: a denial of their due process rights.

*Gasca v. Precythe* is even more on point. In that case, a district court applied Rule 23 to certify a class of Missouri parolees challenging the Missouri Department of Corrections' uniform parole revocation practices. There, as here, the plaintiffs alleged systemic due process violations stemming from the defendants' standardized policies and procedures—specifically, the operation of a single revocation system that failed to provide constitutionally adequate hearings and representation. *See* 2019 WL 112789, at *1. And there, as here, the central question—whether the defendants' uniform revocation processes violated due process—could be answered in one stroke for the entire class. *Id.* Finally, there, as here, the plaintiffs challenged the defendants' overarching revocation system, not the individualized outcomes of their own revocation hearings, satisfying commonality. *Id.*

The PPTB's recently adopted Revocation of Parole and Post-Release Supervision Rule is one example of how Defendants have adopted a uniform set of procedures that governs every parole revocation proceeding in the State, and thus inflicts uniform constitutional injury on each person who faces such a proceeding. *See* Ark. Admin. Code § 158.00.3-4.2(g)(2) ("[T]he offender shall not have the right to have counsel appointed by the State."). This rule applies categorically to all parolees who appear before the PPTB, leaving no discretion for individualized determinations regarding the appointment of counsel. The uniformity of this directive—an explicit prohibition on state-appointed counsel in every revocation hearing—demonstrates precisely the type of standardized policy that courts have consistently found sufficient to establish commonality under Rule 23(a)(2). Like the centralized policies at issue in *Postawko*, *Gasca*, and *Hickman*, the PPTB's rule subjects every member of the Proposed Class to the same denial of counsel, raising a single question capable of resolution "in one stroke," *Wal-Mart*, 564 U.S. at 350: whether Arkansas's categorical refusal to appoint counsel in parole revocation proceedings violates due process. The existence and statewide application of this formal policy therefore satisfy the commonality requirement for class certification.

Defendants' other due process violations are equally widespread, as declarations from parolees incarcerated across the State demonstrate. *See* TRO/PI Br. at 9–13; *see also Robinson*, 111 F. Supp. 2d at 1121–22 (finding commonality where affidavits of prospective class members made "similar allegations"). Defendants routinely coerce parolees to waive their revocation hearings without adequate notice of their rights associated with those hearings. TRO/PI Br. at 9–10. And for those parolees who do not waive their hearings, Defendants routinely deprive them of their rights to present favorable witnesses or evidence and to cross-examine adverse witnesses. *Id.* at 10–13. Whether those practices are lawful under the Due Process Clause and governing Supreme

Court precedent are likewise questions apt to resolution in "one stroke." *Wal-Mart*, 564 U.S. at 350.

        3.    <u>Typicality</u>

The Named Plaintiffs' claims are typical of the claims of other members of the Proposed Class. Rule 23(a)(3)'s typicality requirement "is fairly easily met so long as other class members have claims similar to the named plaintiff." *DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1174 (8th Cir. 1995); *see Paxton*, 688 F.2d at 562 ("The burden of showing typicality is not an onerous one"). As the Eighth Circuit recently reaffirmed, typicality is satisfied when the named plaintiffs' claims arise from the same course of conduct and advance the same legal theory as the class. *See Postawko*, 910 F.3d at 1039 (citing *DeBoer*, 64 F.3d at 1174-75; *Alpern v. UtiliCorp United, Inc.*, 84 F.3d 1525, 1540 (8th Cir. 1996)). And in "a suit for prospective injunctive and declaratory relief, the potential for minor 'factual variations' does not undermine" typicality. *Id.*

Here, the Named Plaintiffs' claims and the claims of the Proposed Class arise from the same course of conduct (*i.e.*, Defendants' policies, practices, and customs surrounding the parole revocation process), and advance the same legal theory (*i.e.*, that those policies, practices, and customs violate the Due Process Clause). For example, all of the Named Plaintiffs currently face the threat of parole revocation and reincarceration. *See* Compl. ¶¶ 97, 108, 123, 132. None of the Named Plaintiffs have been screened for or offered state-funded counsel, despite being indigent. *See id.* ¶¶ 102, 114, 127. And none have been provided with adequate notice of their rights during the revocation process. *See id.* ¶¶ 99–101, 111–13, 125, 127–29. And each faces the substantial likelihood that they will be deprived of their procedural due process rights to present favorable witnesses and evidence, and to cross-examine adverse witnesses, at their hearings, given Defendants' past practices. *See id.* ¶¶ 106–07, 121–22, 130–31, 139–40.

That the Named Plaintiffs have different factual circumstances underlying their parole cases does not defeat typicality. The Eighth Circuit has interpreted typicality to be satisfied even where there are "factual variations," so long as the claims arise "out of the same legal or remedial theory." *Donaldson v. Pillsbury Co.,* 554 F.2d 825, 831 (8th Cir. 1977) (overturning district court's denial of certification of an employment discrimination class because, although the experiences of individual employees "factually differ[ed] in detail," they all were "plainly rooted in the same bias asserted as the source of the discrimination"); *see also Postawko*, 910 F.3d at 1039. Here, members of the Proposed Class all have claims "plainly rooted" in the same fundamentally unlawful revocation system administered by Defendants—one that lacks any consistent mechanism to ensure representation or due process. Any differences in the underlying reasons for their revocation proceedings are not relevant to their due process claims. Accordingly, the Named Plaintiffs' claims are typical of the class as a whole and meet the requirements of Rule 23(a)(3).

### 4.    Adequacy Of Representation

The Named Plaintiffs satisfy Rule 23(a)(4)'s adequacy requirement. "The focus of Rule 23(a)(4) is whether: (1) the class representatives have common interests with the members of the class, and (2) whether the class representatives will vigorously prosecute the interests of the class through qualified counsel." *Paxton*, 688 F.2d at 562–63. Both requirements are satisfied here.

*First*, there are no conflicts of interest between the Named Plaintiffs and other members of the Proposed Class. The Named Plaintiffs are committed to protecting not only their own rights, but the rights of all absent class members, and they have no conflicts with, or interests that are antagonistic to, other members of the Proposed Class. *See* Ex. 43 (C. Davis Decl.) ¶¶ 4–9; Ex. 31 (T. Fason Decl.) ¶¶ 4–9; Ex. 42 (N. McGowan Decl.) ¶¶ 4–9; Ex. 44 (R. Riedel Decl.) ¶¶ 4–9.

*Second*, the Named Plaintiffs will vigorously prosecute absent class members' interests through their qualified counsel. This aspect of adequacy focuses primarily on counsel's

qualifications. So long as the Named Plaintiffs are "aware of the basic facts underlying the lawsuit" and committed to representing the class, they will be considered adequate if their counsel can vigorously prosecute the interests of the class. *Hand v. Beach Ent. KC, LLC*, 456 F. Supp. 3d 1099, 1143 (W.D. Mo. 2020). That is the case here.

Plaintiffs' counsel are highly experienced civil rights litigators with extensive backgrounds in complex class actions challenging unlawful parole, incarceration, and disability-related practices. *See, e.g.*, Class Counsel Decl. of B. Geraghty (B. Geraghty Decl.) ¶¶ 2–3, 7, 9; Class Counsel Decl. of S. Deger-Sen (S. Deger-Sen Decl.) ¶¶ 5–7; Class Counsel Decl. of J. Williams (J. Williams Decl.) ¶¶ 3, 7. Collectively, undersigned counsel and their legal organizations have served as class counsel in numerous certified civil rights class actions seeking declaratory and injunctive relief, including statewide challenges to parole or parole revocation systems and correctional policies. Courts have repeatedly found counsel from the undersigned organizations adequate to represent large classes in cases seeking systemic reform. *See* B. Geraghty Decl. ¶¶ 2–3; S. Deger-Sen Decl. ¶ 5.

Counsel from the undersigned organizations also have substantial experience litigating class actions involving parole revocation and the appointment of counsel in revocation proceedings outside the Eighth Circuit, including cases that resulted in comprehensive, court-approved settlements mandating procedural reforms and ongoing monitoring. *See* B. Geraghty Decl. ¶¶ 2-3. This experience is directly relevant here, where Plaintiffs seek prospective relief addressing the structural deficiencies of Arkansas's parole revocation system.

Plaintiffs' counsel are also well-resourced and capable of prosecuting this litigation vigorously. Plaintiffs are jointly represented by a major international law firm with substantial class-action capacity, a nationally recognized civil rights organization with a dedicated parole

14

reform project, and the state affiliate of a leading civil liberties organization with extensive experience litigating against Arkansas correctional authorities. *See* B. Geraghty Decl. ¶¶ 2–4; S. Deger-Sen Decl. ¶¶ 16–17; J. Williams Decl. ¶¶ 2–3. Together, counsel have already devoted significant time and resources to investigating Defendants' parole revocation practices, reviewing written policies and records, consulting with impacted people, and developing the factual and legal record underlying this case. *See* B. Geraghty Decl. ¶¶ 4–5; S. Deger-Sen Decl. ¶¶ 17–18; J. Williams Decl. ¶¶ 5–6. Counsel are committed to continuing to expend the resources necessary to represent the class and subclass through discovery, certification, and, if necessary, trial. *See* B. Geraghty Decl. ¶¶ 5–6; S. Deger-Sen Decl. ¶¶ 18; J. Williams Decl. ¶ 5.

### C.    The Proposed Class Satisfies Federal Rule Of Civil Procedure 23(b)

Finally, the Proposed Class satisfies all requirements of Rule 23(b)(2) or, in the alternative, (b)(1)(A).

The Proposed Class satisfies Rule 23(b)(2) because Defendants have "acted or refused to act on grounds that apply generally to the class," making final injunctive and corresponding declaratory relief appropriate for the class as a whole. Fed. R. Civ. P. 23(b)(2). "Because one purpose of Rule 23(b)(2) was to enable plaintiffs to bring lawsuits vindicating civil rights, the rule 'must be read liberally in the context of civil rights suits'" such as this one. *Coley v. Clinton*, 635 F.2d 1364, 1378 (8th Cir. 1980) (citation omitted); *see also Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997); 5-23 Moore's Federal Practice—Civil § 23.43(1)(b) (2018) ("Rule 23(b)(2) was promulgated . . . essentially as a tool for facilitating civil rights actions.").

The Proposed Class is a textbook example of a Rule 23(b)(2) class: Defendants have implemented and maintained uniform parole revocation practices that fail to screen for and provide counsel, fail to ensure parolees are adequately informed of their rights during revocation proceedings, coerce parolees into waiving those rights, and deprive parolees of those rights in

connection with presenting evidence and examining witnesses. These practices apply identically to all members of the Proposed Class. Absent an order from this Court, every class member who faces parole revocation will be subjected to the same constitutionally deficient procedures and will suffer the same due-process injury. In short, because the Proposed Class is "cohesive" and a single injunction or declaratory judgment would provide relief to each member of the class, this Court should certify the Proposed Class under Rule 23(b)(2). *See Ebert*, 823 F.3d at 480.

In the alternative, the Proposed Class also satisfies the requirements of Rule 23(b)(1)(A), as prosecuting separate actions would create a risk of "inconsistent or varying adjudications . . . that would establish incompatible standards of conduct for" Defendants. Fed. R. Civ. P. 23(b)(1)(A). "Rule 23(b)(1)(A) 'takes in cases where the party is obliged by law to treat the members of the class alike . . . or where the party must treat all alike as a matter of practical necessity.'" *Amchem Prods.*, 521 U.S. at 614 (citation omitted). That is the case here. Defendants are obliged to offer the same due process rights to all adults facing revocation of their parole—that is, to all members of the Proposed Class. Litigating the Proposed Class members' claims individually would present a risk of varying outcomes as to what standards of conduct should apply when conducting revocation proceedings. A district court in this Circuit previously certified a class to prevent varying outcomes for parolees in Missouri, *see Gasca*, 2019 WL 112789, at *1–2, and this Court should do the same here.

## II.    THE PROPOSED DISABILITY SUBCLASS SATISFIES ALL RULE 23 REQUIREMENTS

In addition to the primary Proposed Class, Plaintiffs seek certification of a Proposed Disability Subclass under Federal Rule of Civil Procedure 23(c)(5). The Proposed Disability Subclass consists of all adult parolees who are in the custody, or under the supervision, of the ADC; who have a disability, as defined by 42 U.S.C. § 12102 and 29 U.S.C. § 705(9)(B); who

need accommodations in order to meaningfully access and participate equally in the parole revocation process; and who currently face, or in the future will face, parole revocation proceedings administered by Defendants. As described below, people with disabilities comprise a substantial and identifiable portion of the population under ADC supervision, and their disabilities frequently affect their ability to understand revocation notices, navigate adversarial proceedings, communicate effectively, and advocate for themselves during the revocation process.

Despite this known population, Defendants maintain no policies, procedures, or practices to ensure parolees with disabilities have their needs accommodated. Instead, Defendants' uniform practice is to conduct revocation proceedings as if all parolees were able-bodied and neurotypical, placing the burden on people with disabilities to navigate an adversarial process without assistance. This systemic failure to act—applied identically to every parolee with a disability—predictably results in those parolees' exclusion from meaningful access to parole revocation proceedings, regardless of the specific nature of their impairment.

Todd Fason and Robby Riedel seek to represent this Proposed Disability Subclass to obtain declaratory and injunctive relief requiring Defendants to implement an accessible parole revocation framework, as required by the ADA and Rehabilitation Act. Although Proposed Disability Subclass members have differing disabilities, their claims arise from the same uniform practice of inaction and rest on the same legal theory: Defendants' failure to adopt accommodation-related policies or safeguards unlawfully denies parolees with disabilities equal access to the parole revocation process. Mr. Fason's and Mr. Riedel's injuries are typical of, and aligned with, those of the Proposed Disability Subclass, rendering them adequate representatives notwithstanding differences in individual diagnoses. *See* Compl. ¶ 41.

17

### A.    The Proposed Disability Subclass Is Adequately Defined And Clearly Ascertainable

The Proposed Disability Subclass is adequately defined and clearly ascertainable. *See supra* at 4–5. Membership in the Proposed Disability Subclass turns on concrete, administratively determinable facts: whether a person is under ADC custody or supervision; whether that person is subject to parole revocation proceedings initiated and conducted by Defendants; and whether that person has a disability as recognized by the ADA, which, upon information and belief, will typically be reflected in ADC or parole records, medical files, or classification information. *See, e.g.*, 12 Ark. Code R. § 60-102 (inmate records include "medical and mental health information and records"). Defendants maintain records identifying parolees subject to revocation proceedings and routinely collect and store information concerning parolees' medical and mental health conditions in the ordinary course of supervision and reincarceration.

Notably, because Plaintiffs seek only declaratory and injunctive relief, they are not required to identify every member of the Proposed Disability Subclass or establish an exact subclass size at this stage. Rather, it is sufficient that subclass membership can be determined by reference to Defendants' own records and practices. *See Postawko*, 2017 WL 3185155, at *6 n.6, *12-13. The Proposed Disability Subclass thus satisfies Rule 23's ascertainability requirement.

### B.    The Proposed Disability Subclass Satisfies All Rule 23(a) Requirements

#### 1.    Numerosity

The Proposed Disability Subclass is so numerous that joinder of all members is impracticable. While precise data on the number of parolees with disabilities accused of violations is not currently available, state sources confirm that people under ADC supervision experience disproportionately high rates of learning and mental health disabilities. *See* Ex. 39 (ACSD Dyslexia Screening & Intervention Plan) at 2; Ex. 41 (Dewey Study) at 64–65. ADC's own records

likewise show widespread mental health needs among people in custody: in 2023, over 1,500 people were placed on suicide watch, more than 2,800 used psychotropic medications, and more than 6,000 received mental health intakes across ADC's three specialized units. Ex. 37 (Bid Solicitation) at 3–4, 6. Moreover, a 2022 study conducted at Arkansas's largest county detention facility—a major feeder facility for ADC prisons—found that 62.6% of people in custody there screened positive for anxiety, 50.3% for depression, and 44.2% for post-traumatic stress disorder. *See* Ex. 38 (Zielinski Study) at 3. Because new people with disabilities are placed on parole each day, the subclass also includes many future members whose names are not yet known. These allegations establish that the subclass is sufficiently large and fluid that joinder is impracticable.

2.    Commonality

Common questions of law and fact unite all subclass members. Each is subject to ADC's uniform parole revocation policies and procedures, which flatly refuse the appointment of counsel and fail to provide reasonable accommodations in violation of the ADA and Rehabilitation Act. *See* TRO/PI Br. at 13–15; Ex. 4 (A. Guyton Decl.) ¶¶ 2, 12–16 (parolee with cognitive impairments due to recent brain surgery denied counsel); Ex. 19 (O. Burnell Decl.) ¶¶ 10, 16 (parolee who had been in "special education classes all throughout school" was not informed of his right to counsel, was "never asked" about his "comprehension ability," and "had difficulty understanding what was happening during [his] hearing"). Whether these statewide policies and practices unlawfully deprive parolees with disabilities of meaningful participation in revocation proceedings is a class-wide question capable of resolution "in one stroke." *Wal-Mart*, 564 U.S. at 350.

The Eighth Circuit has already confirmed that commonality exists in materially similar circumstances. In *Postawko*, the court rejected the argument that differences in each class member's medical condition defeated commonality, explaining that although "the physical symptoms eventually suffered by each class member may vary," the question posed by each class

member—whether the defendants' uniform policies for screening and treating chronic Hepatitis C violated the Constitution and the ADA—was "susceptible to common resolution." 910 F.3d at 1038–39. So too here. Even if subclass members have different disabilities or functional limitations, the central questions remain the same: whether Defendants fail to identify parolees with disabilities, whether they fail to assess needed accommodations, and whether their uniform procedures deny equal access to revocation proceedings. Such claims rise and fall together based on ADC's systemic practices, not on any disability-specific factual variations.

Courts across the country routinely reach the same conclusion when plaintiffs challenge a correctional system's failure to accommodate disabilities on a class-wide basis. In *Armstrong v. Davis*, the Ninth Circuit upheld certification of a class of incarcerated and supervised people with diverse disabilities because, notwithstanding those differences, "all of [them] suffer[ed] similar harm from the [parole authority]'s failure to accommodate their disabilities" during parole proceedings. 275 F.3d at 868. Likewise, in *Yates v. Collier*, the Fifth Circuit affirmed certification of an ADA and Rehabilitation Act subclass despite variations in prisoners' medical conditions, holding that commonality was satisfied because the plaintiffs challenged a systemwide failure to mitigate excessive heat. 868 F.3d 354, 362–66 (5th Cir. 2017) (although "'[n]o two individuals ha[d] the exact same risk,'" the dispositive question was whether the defendants' heat-mitigation measures were adequate "as applied in practice" to all inmates (citation omitted)). Similarly, in *Dunn v. Dunn*, a court certified a class of prisoners with disabilities challenging Alabama's systemic failures to implement policies required by the Rehabilitation Act, identifying common questions including whether the Alabama Department of Corrections lacked adequate systems for identifying disabilities or processing accommodation requests. 318 F.R.D. 652, 663, 665 (M.D. Ala. 2016). And in *Cobb v. Georgia Department of Community Supervision*, the court certified a

20

class of deaf and hard-of-hearing people on probation or parole, recognizing common questions such as whether statewide "policies and practices deny class members adequate and equal access to programs, activities, and services" associated with community supervision. No. 19-cv-32895, 2022 WL 22865202, at *13 (N.D. Ga. Oct. 13, 2022); *see also Harris v. Ga. Dep't of Corr.*, 2021 WL 6197108, at *11–12 (M.D. Ga. Dec. 29, 2021) (similar).

These authorities reinforce what Rule 23 already makes clear: Where a governmental entity employs uniform policies that allegedly systematically fail to identify disabilities or provide required accommodations, the legality of those policies presents a single, unifying class-wide question that readily satisfies commonality.

        3.    <u>Typicality</u>

The claims of Mr. Fason and Mr. Riedel are typical of those of the Proposed Disability Subclass because they arise from the same course of conduct and rest on the same legal theories as the claims of all subclass members. *See* Fed. R. Civ. P. 23(a)(3); *supra* at 12–13 (describing typicality standard). These Plaintiffs, like every member of the Proposed Disability Subclass, are subjected to Defendants' uniform practice of conducting parole revocation proceedings without any system to assess and provide reasonable accommodations, including the appointment of counsel. Their injuries flow from Defendants' across-the-board failure to implement any accommodation framework. Resolution of their claims therefore turns on the legality of Defendants' systemwide inaction, not on individualized assessments of particular disabilities.

Courts addressing disability discrimination claims have repeatedly emphasized that typicality does not require identical disabilities or identical needs. What matters is whether each class member has been harmed by the same system-level violation. As one court explained, where plaintiffs allege they were "discriminated against via systems-level violations of . . . the Rehabilitation Act," the inclusion of people with diverse disabilities and experiences "says

nothing, in and of itself, about whether the named plaintiffs' claims are typical." *Disability Rts. Council of Greater Wash. v. Wash. Metro. Area Transit Auth.*, 239 F.R.D. 9, 26–28 (D.D.C. 2006). Simply put, "'[t]ypical' does not mean identical." *Moore v. Napolitano*, 926 F. Supp. 2d 8, 30 (D.D.C. 2013). Courts "do not insist that the named plaintiffs' injuries be identical with those of the other class members." *Armstrong*, 275 F.3d at 869. Instead, it is enough that the injuries are "similar" and "result from the same, injurious course of conduct," such as a failure to accommodate that inhibits "parolees with disabilities" from "comprehend[ing] what is occurring at" their "parole revocation hearings" and "communicat[ing] with those presiding." *Id.*

These authorities are instructive here. Plaintiffs and all members of the Proposed Disability Subclass challenge the same structural failure: Defendants' decision to operate parole revocation proceedings without any accommodation infrastructure for people with disabilities. Because liability and injunctive relief can be determined on a class-wide basis without individualized inquiry into particular impairments, Plaintiffs' claims are typical of the Proposed Disability Subclass notwithstanding variation in the nature of individual disabilities.

4.     Adequacy Of Representation

Mr. Fason and Mr. Riedel will fairly and adequately protect the interests of the subclass. They have a strong personal interest in the outcome of this litigation, are committed to protecting the rights of absent class members, and have no conflicts with, or interests that are antagonistic to, absent class members. *See* T. Fason Decl. ¶¶ 4–9; R. Riedel Decl. ¶¶ 4–9.

In addition, Mr. Fason and Mr. Riedel are represented by counsel with deep expertise litigating disability rights claims, including under the ADA and Rehabilitation Act and in the class action context. Counsel have successfully represented classes of people with disabilities challenging systemwide failures to provide reasonable accommodations in correctional, parole, and supervision settings, and have defended class certification on appeal in cases involving varying

22

disabilities but uniform discriminatory practices. *See, e.g.*, S. Deger-Sen Decl. ¶¶ 5–6, 8–9; *Davis v. U.S. Parole Commc'n*, No. 24-cv-1312, 2025 WL 457779 (D.D.C. Feb. 11, 2025). This experience uniquely positions counsel to litigate the Proposed Disability Subclass's claims, which turn on Defendants' failure to implement any accommodation infrastructure rather than individualized accommodation disputes.

### C.    The Proposed Class Satisfies Federal Rule Of Civil Procedure 23(b)

The Proposed Disability Subclass independently satisfies Rule 23(b)(2) because Defendants have acted and refused to act on grounds generally applicable to parolees with disabilities by administering parole revocation proceedings without modifications, effective communication, or meaningful screening for disability-related needs, as required by Title II of the ADA and § 504 of the Rehabilitation Act. The Proposed Disability Subclass challenges Defendants' systemic failure to implement *any* mechanism for accommodating parolees with physical, cognitive, learning, intellectual, or mental health disabilities during revocation proceedings. This failure is uniform. It does not vary by individual circumstance or discretionary judgment. Defendants routinely fail to accommodate the needs of this subclass. As a result, all members of the subclass are exposed to the same risk for exclusion from meaningful participation in revocation proceedings and the same denial of statutorily guaranteed protections. A single injunction requiring Defendants to implement reasonable modifications, disability screening, and effective-communication measures would provide uniform relief to the entire subclass.

This is precisely the kind of claim for which Rule 23(b)(2) certification is appropriate. In *Planned Parenthood Arkansas & Eastern Oklahoma v. Selig*, the court certified a Rule 23(b)(2) class where the plaintiffs' claims "turn[ed] on a single question that uniformly applie[d] to all class members," and "[r]esolution of that question as to one of the plaintiffs necessarily resolve[d] the issue for the entire class." 313 F.R.D. at 91 (quoting *Avritt v. Reliastar Life Ins. Co.*, 615 F.3d

1023, 1036 (8th Cir. 2010)). Because the challenged state action affected all class members identically and the relief sought was the same for all, certification under Rule 23(b)(2) was proper.

Other district court decisions in this Circuit are instructive. In *Murphy v. Piper*, for example, the district court certified a class of individuals with diverse disabilities under Rule 23(b)(2), reasoning that the plaintiffs "d[id] not seek individualized injunctive relief for each class member." No. 16-cv-2623, 2017 WL 4355970, at *15–16 (D. Minn. Sept. 29, 2017). Instead, the plaintiffs sought "improvements to Defendant's administration" of a housing program, which would ultimately enable the plaintiffs to access individualized housing services. *Id.* at *15; *see also McKay v. Cnty. Election Comm'rs for Pulaski Cnty.*, 158 F.R.D. 620, 625–26 (E.D. Ark. 1994) (certifying class of voters with diverse physical disabilities under Rule 23(b)(2)).

In the alternative, the Proposed Disability Subclass satisfies Rule 23(b)(1)(A) because separate actions would create a risk of inconsistent adjudications establishing incompatible standards of conduct for Defendants. Rule 23(b)(1)(A) applies where a defendant is "obliged by law to treat the members of the class alike." *Amchem Prods.*, 521 U.S. at 614. Here, Defendants are required under the ADA and Rehabilitation Act to provide reasonable accommodations to parolees with disabilities during revocation proceedings. Litigating these claims individually would risk conflicting rulings regarding what Defendants are required to ensure parolees with disabilities are screened for, and, when necessary, provided with reasonable accommodations during their revocation proceedings. As noted above, courts in this Circuit have certified parole related classes under Rule 23(b)(1)(A) to prevent such inconsistent outcomes. *See Gasca*, 2019 WL 112789, at *1–2. The same logic applies here. The Proposed Disability Subclass challenges Defendants' uniform failure to comply with federal disability-rights law in parole revocation proceedings. The declaratory and injunctive relief sought is identical for every subclass member.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request the following relief:

- Certify a Plaintiff Class consisting of all adult parolees who are in the custody, or under the supervision, of the ADC, and who currently face, or who in the future will face, parole revocation proceedings administered by Defendants;

- Certify a Disability Subclass consisting of all adult parolees who are in the custody, or under the supervision, of the ADC; who have a disability, as defined by 42 U.S.C. § 12102 and 29 U.S.C. § 705(9)(B); who need accommodations in order to meaningfully access and participate equally in the parole revocation process; and who currently face, or who in the future will face, parole revocation proceedings administered by Defendants;

- Appoint Named Plaintiffs as Class Representatives;

- Appoint Plaintiffs Todd Fason and Robby Riedel as Subclass Representatives; and

- Appoint the undersigned attorneys of the Roderick & Solange MacArthur Justice Center, Latham & Watkins LLP, and the American Civil Liberties Union of Arkansas as counsel for the Class and Subclass.


DATED: February 2, 2026     Respectfully submitted,

By: */s/ John C. Williams*
John C. Williams (Ark. Bar No. 2013233)
Hadiyah Cummings (Md. Bar No. 2504281001)
ARKANSAS CIVIL LIBERTIES UNION FOUNDATION, INC.
904 West 2nd Street
Little Rock, AR 72201
Tel.: 501-374-2842
john@acluarkansas.org
hadiyah@acluarkansas.org

Bridget Geraghty (*motion to appear pro hac vice forthcoming*)
Emily C. Keller (*motion to appear pro hac vice forthcoming*)

—

Olivia Fritz (*motion to appear pro hac vice forthcoming*)
RODERICK & SOLANGE MACARTHUR JUSTICE CENTER
160 East Grand Avenue, 6th Floor
Chicago, IL 60611
Tel.: 312-503-8282
Fax: 312-503-0891
bridget.geraghty@macarthurjustice.org
emily.keller@macarthurjustice.org
olivia.fritz@macarthurjustice.org

Samir Deger-Sen (*motion to appear pro hac vice forthcoming*)
S.Y. Jessica Hui (*motion to appear pro hac vice forthcoming*)
LATHAM & WATKINS LLP
1271 Avenue of the Americas
New York, NY 10020
Tel.: 212-906-1200
Fax: 212-751-4864
samir.deger-sen@lw.com
jess.hui@lw.com

Christine C. Smith (*motion to appear pro hac vice forthcoming*)
Chanelle N. Jones (*motion to appear pro hac vice forthcoming*)
LATHAM & WATKINS LLP
555 Eleventh Street NW, Suite 1000
Washington, DC 20004
Tel.: 202-637-2200
Fax: 202-637-2201
christine.smith@lw.com
chanelle.jones@lw.com

*Attorneys for Plaintiffs and the Proposed Class*

**<u>Certificate of Service</u>**

I hereby certify that on February 2, 2026, I filed the foregoing via the CM/ECF system and will serve Defendants Boyce Hamlet, Lindsay Wallace, Jim Cheek, and Jamie Barker by serving a copy with the Complaint and Summons.

*/s/ John C. Williams*
John C. Williams
